UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 25-MJ-137 (ZMF) |
| : | |
| ALFREDO PANNELL, : | |
| Defendant. : | |

**UNITED STATES' MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that Defendant Alfredo PANNELL ("PANNELL") be detained pending trial pursuant to 18 U.S.C. § 3142(f)(1)(C). The United States requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

**PROCEDURAL HISTORY AND RELEVANT FACTS**

*May 30, 2025 –Controlled Purchase of Cocaine Base*

On Friday May 30, 2025, members of the Metropolitan Police Department/Drug Enforcement Agency ("MPD DEA") Task Force conducted a controlled narcotics purchase from ALFREDO PANNELL ("PANNELL") in the 5800 block of Dix Street, Northeast, using an undercover law enforcement officer ("the UC"). Prior to the operation, the UC was then provided with $500.00 of prerecorded funds and equipped with an audio and video recording device to capture the purchase of cocaine base.

The UC drove to the 5800 block of Dix Street, Northeast, in an undercover law enforcement vehicle ("the UC vehicle"). MPD DEA Task Force Officers established a physical observation

post for conducting surveillance in the 5800 block of Dix Street, Northeast, before the UC arrived. Based on prior interactions, law enforcement was aware that PANNELL and his family resided in the 5800 block of Dix Street, Northeast.

PANNELL arrived in the 5800 block of Dix Street, Northeast, at approximately 12:19 p.m. via rideshare vehicle. PANNELL exited the vehicle and entered a residence in the 5800 block of Dix Street, Northeast. PANNELL then exited that residence and engaged in a conversation with the UC about the purchase of a ½ ounce quantity of cocaine base.



PANNELL told the UC to give him a moment and walked back into the residence. A few moments later, PANNELL exited the residence, walked to the UC vehicle, and entered the rear passenger compartment of the UC Vehicle.

The UC exchanged pleasantries with PANNELL, and PANNELL handed the UC a clear plastic bag with a loose, white rock-like substance. In exchange, the UC provided PANNELL with the $500.00 in pre-recorded funds. PANNELL then exited the UC vehicle and went back inside 5825 Dix Street, Northeast.  Before departing, PANNELL agreed to let the UC contact him for future narcotics purchases.  The substance provided to the UC by PANNELL field-tested positive for the presence of cocaine base and weighed 16.6 grams (.59 ounces).  A subsequent DEA test confirmed the presence of 15.547 grams of cocaine.



**U.S. Department of Justice**
**Drug Enforcement Administration**

Mid-Atlantic Laboratory
Largo, MD

**Chemical Analysis Report**

Washington Division Office
801 I Street N.W., Suite 500
Washington, DC 20001

Case Number: GD-25-0044
LIMS Number: 2025-SFL3-04398

**Observations, Results and Conclusions:**

| Exhibit | Substance(s) Identified | Net Weight | Substance Purity | Amount Pure Substance |
|---|---|---|---|---|
| 6 | Cocaine | 15.547 g ± 0.002 g | ---- | ---- |

### *June 23-24, 2025 – Controlled Telephone Call and Controlled Purchase of Cocaine Base*

On Monday June 23, 2025, the UC called PANNELL on PANNELL's known cellular telephone number to arrange the purchase of narcotics. PANNELL answered the phone and exchanged pleasantries with the UC. The UC inquired about the purchase of a ½ ounce quantity of "up," and "down" (referring to a certain quantity of crack cocaine, a stimulant ("up") and heroin, a depressant ("down")). PANNELL agreed to the sale. Both parties then agreed to meet the following day at approximately noon.

On Tuesday June 24, 2025, law enforcement conduced a controlled narcotics purchase with the UC, in the 600 block of F Street Northwest. The purpose of this operation was to purchase ½ ounce quantity of crack cocaine from PANNELL. The UC was provided with $1,000 in prerecorded funds. Additionally, the UC, and the UC vehicle, were equipped with audio and video recording devices to capture the controlled purchase.

Prior to the operation, PANNELL called the UC and asked how much the UC usually paid for "down" (heroin). The UC responded that the price of "down" depends on the area. PANNELL stated that he was waiting to hear back from an associate for a wholesale price. The UC told PANNELL not to worry about the heroin if he didn't have it handy, which PANNELL

3

acknowledged. At approximately 12:20 p.m., surveillance officers established a physical monitoring post in the 600 block of F Street, Northwest, prior to the UC entering the area. At approximately 12:35 pm., law enforcement observed PANNELL walking in that location.



The UC arrived at the location and called PANNELL on the TARGET PHONE NUMBER. PANNELL advised that he was in front of the Capitol One Arena. The UC described the UC car and relocated to PANNELL'S location. PANNELL then entered the vehicle, and both parties exchanged pleasantries.



PANNELL reached into a small satchel shoulder bag and retrieved a clear, plastic bag containing a loose, white rocklike substance. PANNELL handed that item to the UC in exchange

for $1000.00 of prerecorded funds. PANNELL then told the UC that PANNELL could get the heroin from another associate at a later date, and then exited the UC vehicle. PANNELL was observed leaving the area on foot.



The substance provided to the UC by PANNELL field-tested positive for the presence of cocaine base and weighed 35.6 grams (1.26 grams). Subsequent DEA testing contradicted the field test, finding that there were no controlled substances in bag sold by PANNELL to the UC.

### *Search Warrant 25-SC-1251*

On August 4, 2025, United States Magistrate Judge Zia M. Faruqui signed Search Warrant 25-SC-1251, which authorized the collection of real-time geolocation information and historical cell site data from the TARGET PHONE NUMBER and the TARGET DEVICE.

Law enforcement monitored the geolocation information from the TARGET DEVICE and can confirm that the TARGET DEVICE is located in the District of Columbia during the majority of the daylight and overnight hours. However, the proximity radius of the geolocation data has not allowed law enforcement to pinpoint the TARGET DEVICE's actual location given the number of residences contained within that radius.

### *August 12, 2025, Attempted Purchase of Cocaine Base and Fentanyl*

On August 12, 2025, the UC attempted to purchase controlled substances from PANNELL. Prior to the attempted purchase, the UC requested to purchase, and PANNELL agreed to sell 62

grams of cocaine base and ½ ounce of fentanyl for $2,500.

The agreed upon location for the sale was the Shaw Metro Station, which is located in the 1700 block of 7th Street NW. Prior to the operation, surveillance officers entered the area via vehicle and foot. At approximately 12:20 p.m. law enforcement observed PANNELL arrive in the area and interact with the UC, who was sitting inside the UC vehicle.



Inside the UC vehicle, PANNELL and the UC discussed the sale of cocaine base and fentanyl. The UC provided $2,500 in prerecorded funds and PANNELL stated that he was going to retrieve the narcotics and return to the UC vehicle. PANNELL then exited the UC vehicle, and promptly left the area. Law enforcement attempted to locate PANNELL in the area with negative results. Geolocation data provided pursuant to 25-SC-1521 showed that PANNELL travelled to the Glenmont area of Montgomery County, Maryland, and then briefly travelled to Prince Georges County, Maryland. Later that evening, PANNELL travelled to the Columbia Heights Metro Station, and then to the Kalorama neighborhood of Northwest Washington, D.C., where he remained for an extended period.

### *PANNELL Charged by Criminal Complaint*

On August 13, 2025, United States Magistrate Judge Moxila A. Upadhyaya signed a criminal complaint in Case Number 25-MJ-00137, charging PANNELL with Distribution of Cocaine Base

and Distribution of More than 28 Grams of Cocaine Base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii), and 841(b)(1)(C). Upon signing the complaint, Judge Upadhyaya issued a warrant for PANNELL's arrest. This Complaint was applied for, and signed, before law enforcement received the DEA Lab results identified above.

### *25-SW-229 and 25-SW-247*

On August 15, 2025, United States Magistrate Judge Moxila A. Upadhyaya signed Search Warrant 25-SW-229, authorizing the use of a cell-site simulator to track and locate the TARGET DEVICE in order to effect the arrest of PANNELL.

Law enforcement was able to utilize information provided pursuant to 25-SC-1251 to place PANNELL within the general area of 3435 Brown Street, Northwest. Utilizing the cell-site simulator pursuant to 25-SW-229, law enforcement was able to pinpoint PANNELL's location at 3435 Brown Street, Northwest, Apartment 27, Washington, D.C. 20011 ("the PREMISES").

On August 27, 2025, law enforcement knocked and announced their presence at the PREMISES and made entry into the PREMISES in order to effect the arrest warrant in Case Number 25-MJ-137. Once inside the PREMISES, law enforcement located PANNELL in the back bedroom on the floor, and took him into custody. PANNELL was the only person inside the PREMISES when law enforcement made entry.

While taking PANNELL into custody, law enforcement observed a black in color firearm in plain view inside a bedroom closet. The firearm was visible because the closet door was open at the time law enforcement entered the PREMISES. Law enforcement made no further effort to locate or seize evidence and has secured the PREMISES in anticipation of a search warrant.

On August 27, 2025, United States Magistrate Judge G. Michael Harvey signed Search Warrant 25-SW-247 authorizing the search of the PREMISES.  During the execution of that search warrant, law enforcement recovered the following:

➢ $1,005.00 in United States Currency;



➢ One Springfield Armory, Model XDX .45 caliber semi-automatic handgun bearing serial number 324-3321.  The handgun was loaded with one round in the chamber and six rounds in the magazine.



> One clear plastic bag containing approximately 12.5 grams of off-white rocklike substance. This substance field-tested positive for the presence of cocaine base.

 

> Three plastic bags containing small capsules which contained approximately 71.9 grams of a white rocklike substance. This substance field-tested positive for the presence of 3,4-Methylenedioxymethamphetamine ("MDMA") and Butylone.[1] Both MDMA and Butylone are Schedule I controlled substances.

 

---

[1] Butylone, β-keto-N-methylbenzodioxolylbutanamine (MBDB) is a synthetic psychoactive substance which is structurally similar to amphetamines and related to the narcotic referred to generally in street slang as "bath salts." *See* https://www.sciencedirect.com/topics/neuroscience/butylone (last visited August 30, 2025).

As noted in the Pretrial Services Report, PANNELL was convicted of Carrying a Pistol Without a License in D.C. Superior Court Case Number 2008 CF2 016644.  PANNELL was sentenced to 56 months' imprisonment for that offense and, as such, was aware that he was convicted of a crime punishable by imprisonment for a term exceeding one year.  As a result, PANNELL may not lawfully possess a firearm.

## ARGUMENT

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). The parties may proceed by way of proffer and hearsay is permitted. Id.; United States v. Smith, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the United States is not required to "spell out in precise detail how the United States will prove its case at trial, nor specify exactly what sources it will use." United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986); United States v. Williams, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should neither be a mini trial, nor used as a subterfuge to obtain discovery. Smith, 79 F.3d at 1210; Williams, 798 F. Supp. at 36.

**1.    The United States' Bases for Detention**

The United States seeks pretrial detention pursuant to 18 U.S.C. §§ 3142(f)(1)(C) because PANNELL is charged with a Controlled Substances Act offense which carries a maximum sentence of at least 10 years.  Given the seizure of a firearm and additional narcotics incident to PANNELL's arrest, he will also be charged with a firearms violation (18 U.S.C. § 922(g)(1)) and a crime punishable by a maximum sentence of life imprisonment (18 U.S.C. § 924(c)(1)(A)(i)). Consequently, detention is also appropriate pursuant to 18 U.S.C. §§ 3142(f)(1)(B), (E).

Moreover, because there is probable cause to believe – based on the evidence recovered from the PREMISES pursuant to a judicially authorized search warrant following PANNELL's

arrest in that location – that PANNELL committed a violation of 18 U.S.C. § 924(c)(1)(A)(i), PANNELL is subject to a rebuttable presumption in favor of pretrial detention pursuant to 18 U.S.C. § 3142(e)(3)(B). United States v. Lee, 195 F. Supp. 3d 120, 128 (D.D.C. 2016) (Berman Jackson, J.) The rebuttable presumption "'operate[s] <u>at a minimum</u> to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption.'" Id. at 124-25 (quoting United States v. Alatishe, 768 F.2d 364, 371 (D.C.Cir.1985) (original emphasis); <u>see also</u> United States v. Portes, 786 F.2d 758, 764 (7th Cir.1985) (the presumption requires the defendant to come "forward with some evidence that he will not flee or endanger the community if released") (internal quotation and citation omitted)). As this Court has held, the defendant must present <u>evidence</u> to rebut the presumption. United States v. Lee, 195 F. Supp. 3d 120, 124, 125 (D.D.C. 2016).

      Moreover, even if PANNELL presents evidence to rebut the presumption, the presumption does not disappear entirely. Id. at 125 (citing United States v. Ali, 793 F. Supp. 2d 386, 388 n.2 (D.D.C. 2011) (noting that the Bail Reform Act requires the Court to consider the rebuttable presumption as a factor even if the Defendant "produces credible evidence" to rebut it); United States v. Bess, 678 F. Supp. 929, 934 (D.D.C. 1988) ("[The presumption] is incorporated into the § 3142(g) factors considered by the court when determining whether conditions of release can be fashioned or whether the defendant must be detained pretrial.")) The rebuttable presumption remains as a factor that must be considered by the Court, because it "'<u>reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial</u>.'" Id. (quoting United States v. Stone, 608 F.3d 939, 945-46 (6th Cir. 2010)) (emphasis added).

11

The United States respectfully submits that PANNELL cannot rebut the presumption in favor of pretrial detention. In addition to his distribution, and attempted distribution, of controlled substances to undercover law enforcement officers, PANNELL was arrested, alone, in an apartment from which a loaded firearm and additional controlled substances were recovered pursuant to a search warrant.

**2.     The Bail Reform Act Factors All Favor Detention Given PANNELL's Risk of Dangerousness to the Community**

As the Court is aware, 18 U.S.C. § 3142(g) enumerates four factors that the Court should analyze in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. Each of these factors weighs in favor of pretrial detention in this case.

**A.     The Nature and Circumstances of the Offenses Weigh in Favor of Detention**

The Nature and Circumstances of the charged offenses weigh heavily in favor of pretrial detention in this case. This Court does not need a reminder from the United States of the dangers inherent in armed drug trafficking in the District of Columbia. Here, PANNELL sold, attempted to sell, and offered to sell cocaine base, fentanyl, cocaine, and heroin to an undercover police officer and additional controlled substances and a loaded handgun were recovered from his bedroom following his arrest.

**B.     The Weight of the Evidence Against the PANNELL Favors Pretrial Detention**

The evidence of both PANNELL's guilt and his dangerousness to the community are strong and weigh in favor of pretrial detention. PANNELL sold and attempted to sell controlled

12

substances to an undercover officer, which contacts were audio- and video-recorded. PANNELL also offered to sell one kilogram of cocaine to an undercover officer via text message. Even more firearms and controlled substances were seized from his residence pursuant to a federal search warrant.

### C. PANNELL's History and Characteristics Weigh in Favor of Detention

PANNELL's history and characteristics also weigh in favor of detention, in light of his history of arrests and criminal convictions for offenses involving controlled substances and firearms, as well as his history of noncompliance with supervision.

PANNELL was convicted of Carrying a Pistol Without a License in D.C. Superior Court Case Number 2008 CF2 16644 and sentenced to 56 months incarceration with 43 months suspended, to be followed by 3 years' supervised probation. According to the D.C. Superior Court docket, PANNELL's probation was revoked, and he was remanded to serve the entire 56 months. PANNELL was also convicted of Distribution of Cocaine in D.C. Superior Court Case Number 2006 CF2 7662, and Attempted Possession of Cocaine and Marijuana in D.C. Superior Court Case Number 2004 CMD 12032.

The United States acknowledges that PANNELL's criminal convictions are not particularly recent and, according to BOP records, PANNELL has been released since January 14, 2013. However, although PANNELL has not accrued any new convictions during that time, it is not for lack of trying.

- PANNELL was charged in D.C. Superior Court Case Number 2016 CF3 20194 with Robbery While Armed, which case was dismissed.

- PANNELL was charged with Simple Assault/Domestic in D.C. Superior Court Case Number 2017 DVM 1356, which case was resolved by nolle prosequi.

13

- PANNELL was charged with Simple Assault/Domestic in D.C. Superior Court Case Number 2018 DVM 717, which case was dismissed for want of prosecution due to witness unavailability.

- PANNELL was charged with Simple Assault/Domestic in D.C. Superior Court Case Number 2019 DVM 105, which case was dismissed for want of prosecution due to witness unavailability. According to the Court Docket, PANNELL was violating of the terms of his pretrial supervision on the date the case was dismissed.

- PANNELL was charged with Possession of Cocaine in D.C. Superior Court Case Number 2019 CMD 13086, which case was resolved by nolle prosequi.

- PANNELL was charged with Leaving After Colliding / Property Damage / Injury to Animal in D.C. Superior Court Case Number 2019 CTF 14263, which case was dismissed.

As reflected in the Pretrial Services Report, PANNELL has had numerous warrants issued for his arrest for failing to comply with Court Orders. (Docket Entry 6), at 3.

### D.    The Danger to the Community Created by PANNELL's Release Weighs in Favor of Detention

The D.C. Circuit has noted that "'[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community,'" pretrial detention is available to "'disable the arrestee from executing that threat.'" United States v. Munchel, 991 F.3d 1273, 1280 (D.C. Cir. 2021) (quoting United States v. Salerno, 481 U.S. 739, 755 (1987)). This requires the Court to make a "forward looking determination" about the Defendant's risk of danger to the community, keeping in mind that detention may be justified even if the Court does not explicitly find that Defendant is a risk of committing acts of violence. United States v. Hale-Cusanelli, 3 F.4th 449, 456 (D.C. Cir. 2021) (citing Munchel, 991 F.3d at 1283. The Court may consider whether or not it believes the Defendant will comply with terms of pretrial release in making this determination, but the detention decision cannot be based exclusively on that consideration. Munchel, 991 F.3d at 1281, 1283.

PANNELL poses an obvious and articulable threat to the community. Specifically, the threat posed by PANNELL is that he will continue to engage in the distribution and possession with intent to distribute dangerous and highly addictive narcotics while armed with at least one firearm. Even if this Court were to find that PANNELL is not a risk of committing additional acts of violence, the risk of dangerousness that he poses to the community justifies pretrial detention.

## CONCLUSION

PANNELL is eligible for pretrial detention pursuant to 18 U.S.C. §§ 3142(f)(1)(B), 3142(f)(1)(C), and 3142(f)(1)(E). Since there is probable cause to find that he violated 18 U.S.C. § 924(c)(1)(A)(i), there is a rebuttable presumption in favor of pretrial detention in this case. Even if PANNELL could present sufficient evidence to rebut the presumption, all four of the Bail Reform Act factors weigh heavily in favor of pretrial detention, and Defendant poses a substantial risk of dangerousness to the community if he is released pending trial in this case.

WHEREFORE, the United States respectfully requests that the Court issue an Order granting the United States' motion that the defendant be held without bond pending trial.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: */s/ James B. Nelson*
JAMES B. NELSON
D.C. Bar No. 1613700
Assistant United States Attorney
Violent Crime and Narcotics Trafficking Section
601 D. Street, N.W.
Washington, D.C. 20530
(202) 252-6986
james.nelson@usdoj.gov